## Foreman *versus* Hosler et al.

1. A married woman who was deserted by her husband was declared a
feme sole trader under the Act of May 4th 1855.    Subsequently, she executed
a mortgage, not in her own name, nor as a feme sole trader, but as the wife of
a man with whom she was living, but to whom she was not married, and who
joined with her in the mortgage. *Held*, that as she had the power to execute
the mortgage, as a feme sole, it bound whatever title she had in the land.

2. Per STERRETT, J.—When a married woman conveys under the authority
given her by the Act of 1855, it would be well to recite the fact or facts
which bring her within its provisions, and refer to the decree, if any has
been obtained, but we cannot hold that a failure to do so vitiates the deed.
While such recital of authority is entirely proper and desirable it is not
essential.    The act prescribes no particular form.

3. Where a case is submitted to the court under the Act of April 22d
1874, it is of the utmost importance that the requirements of the act should be
strictly complied with.    The facts found by the court should be separately
and distinctly set forth with at least as much precision and particularity as
are required in a special verdict, and then the conclusions of law as appli-
cable to the facts should be clearly stated. *Ellis v. Lane*, 4 Norris 265,
followed.

May 13th 1880.    Before MERCUR, GORDON, PAXSON, TRUNKEY
and STERRETT, JJ.    SHARSWOOD, C. J., and GREEN, J., absent.

Error to the Court of Common Pleas of *Cumberland county* :
Of May Term 1880, No. 89.

Ejectment by James K. Foreman against Benjamin Hosler
and others, for a tract of four acres of land in the borough of
Carlisle.

On October 25th 1870, Robert Given conveyed to Mary S. Saw-
telle, wife of Nathaniel H. Sawtelle, a tract of land, embracing
about five acres, within the borough of Carlisle.    Mrs. Sawtelle
continued seised of this tract until 4th June 1871, when she died

[Foreman *v*. Hosler.]

intestate, her husband, and an only child, Eva Amelia, wife of James B. Richards, surviving her.

On the 19th June 1871, Mrs. Eva Amelia Richards executed a power of attorney to her father, which, after reciting the late death of her mother, proceeds:

"I, the said Eva Amelia Richards, being of full age * * * do hereby constitute and appoint the said Nathaniel H. Sawtelle, my father, my true and lawful attorney in fact for me, and in my name to collect all the assets of the estate of said decedent; to sell and convey any real or personal estate belonging thereto, and to receive, receipt for and release the purchase-money thereof, and to do any and every act which may be necessary, or which he, my said attorney in fact, may consider proper and prudent in order to dispose of said real estate. * * *

(Signed)     MRS. EVA A. RICHARDS.     [L. S.]"

It was thus acknowledged:

"Personally appeared before me, a justice of the peace in and for said county, the above-named Mrs. Eva A. Richards, who, being duly sworn, did acknowledge the foregoing power of attorney to be her act and deed, and desired the same to be recorded as such.

(Signed)     DAVID SMITH, J. P.     [SEAL.]"

It did not appear, from anything in the power or in the certificate of acknowledgment, that Mrs. Richards was a feme covert.

On the 27th of May 1872, Nathaniel H. Sawtelle executed a deed for the land which had belonged to his wife, Mary S. (with certain reservations unimportant in this controversy), to Eva A. Richards, his daughter. The parties are described in that deed as "Nathaniel H. Sawtelle and Eva Amelia Richards, of the borough of Carlisle, Cumberland county, of the first part, and Eva Amelia Richards of the same place, party of the other part."

The indenture is made to witness that the said Nathaniel H. Sawtelle and Eva Amelia Richards, for and in consideration of the sum of $500, * * * hath bargained, granted, sold, released, * * * and by these presents do bargain, grant, * * * unto the said Eva Amelia Richards, her heirs and assigns, certain land.

"In witness whereof, the said parties to these presents have interchangeably set their hands and seals.

(Signed)     NATHANIEL H. SAWTELLE,     [SEAL.]
EVA AMELIA RICHARDS.     [SEAL.]
By her attorney in fact: NATHANIEL H. SAWTELLE."

This deed was acknowledged by Nathaniel H. Sawtelle alone, but "for himself and as attorney in fact for Eva Amelia Richards.'

[Foreman *v.* Hosler.]

The plaintiffs contended at the trial, 1st. That this deed, executed by N. H. Sawtelle in a double capacity, for himself and as attorney in fact for Eva Amelia Richards, though it contains no other express reference to a power of attorney, must be taken as an execution of it.

2d. That, in any event, it conveyed to Eva Amelia Richards the life estate which her father had, as tenant by the curtesy, an estate undetermined by his death.

On the 19th March 1872, on the petition of Eva Amelia Richards, in which she alleged desertion by her husband, the Court of Common Pleas of Cumberland county decreed that she should have the status of a feme sole trader, in so far as such status could be acquired under the Acts of 22d February 1718, and 4th May 1855: (Purdon, *Feme Sole Traders.*)

A ceremony of marriage was shortly thereafter undergone, by which Mrs. Richards supposed herself to become the wife of J. J. Cart, whose name she assumed, with whom she lived as wife, and as whose wife she became known in the community.

On the 30th September 1874, this woman, then for a long time known as Mrs. Cart, executed a mortgage which purported to be " between Jacob Cart and Eva Amelia Cart, his wife, of the borough of Carlisle, of the one part, and L. T. Greenfield, of the same place, of the other part," and to be made to secure a bond of $416.58, conditioned for the payment of $208.29. This mortgage was signed thus:

J. J. CART,            [L. S.]
EVA AMELIA CART.       [L. S.]

The certificate of separate acknowledgment reads : " The said Eva Amelia Cart, being of full age, and by me privately examined and apart from her said husband, declared that she did voluntarily seal and deliver the same without any coercion or compulsion of her said husband."

Having ascertained that no valid divorce from Mr. Richards had been obtained, Mrs. Richards petitioned for a divorce to the Court of Common Pleas of Cumberland county, and on the 22d April 1878, a decree divorcing her was made.

A sci. fa. issued on the said mortgage to No. 185, August Term 1876, and judgment was recovered against the mortgagors, September 1st 1876, for $213.24. On an alias levari facias, the mortgaged property was sold to James K. Foreman, the present plaintiff, for $250.75.

The defence was, as to all the defendants, that Foreman had failed to show a prima facie title, because the mortgage to Greenfield, under which he claimed, was made by one styling herself Eva A. Cart, the wife of J. J. Cart, whereas she was in fact not lawfully married to him.

[Foreman *v.* Hosler.]

John H. Boyd, and those claiming under him, defended for his part of the land in default, under a deed to him from N. H. Sawtelle, executed in his own name and in that of Eva A. Richards, as her attorney in fact, September 2d 1872. Plaintiff insisted that the deed of 27th May 1872, had executed and exhausted the power of attorney. He also insisted that the power of attorney embraced only the real estate which Mrs. Richards possessed at its execution, and that since this deed conveyed to her her father's life-interest, he could not again convey it to John H. Boyd four months afterwards.

Others defended under deeds executed by Sawtelle, for himself and as attorney in fact, after the deed from Sawtelle to Mrs. Richards. While others defended under parol contracts of sale made before the deed to Mrs. Richards.

Benjamin Hosler, John Neff, H. G. Carr, defended under deeds executed by N. H. Sawtelle, for himself and as attorney in fact, after the deed from Sawtelle to Mrs. Richards.

The case was submitted to the court, McClean, P. J. of the Forty-second judicial district, under the Act of April 22d 1874, who filed the following decision :

"The controversy in this case relates to the title to certain parts of a tract of land in the borough of Carlisle, which had been conveyed by Robert Given and wife, by deed dated 25th October 1870, to Mary S. Sawtelle, the wife of Nathaniel H. Sawtelle.

"This land was laid off in lots, and contracts for the sale of those claimed by John Neff, James Tait, two of the defendants, and also of George Lane and Emma Bridget, for which defence is now made in the name of Benjamin Hosler, were entered into before the 4th day of June 1871, at which date Mrs. Sawtelle died intestate. She left surviving her Nathaniel H. Sawtelle, her husband, and one child, Eva Amelia Richards, who was married to James B. Richards on the 27th day of November 1867.

"It is in evidence that Richards had deserted his wife before the death of Mrs. Sawtelle, and that consequently Mrs. Richards had all the rights and privileges secured to a feme sole trader under the Act of the 22d of February 1718, and her property, real and personal, acquired upon the death of her mother intestate, was subject to her free and absolute disposal without any liability to be interfered with or obtained by her husband. Thus, as if he were previously dead, Mrs. Richards, on the 19th day of June 1871, about a fortnight after the death of her mother, being of full age and under the circumstances *sui juris*, constituted and appointed in writing, under seal, her father, Nathaniel H. Sawtelle, her true and lawful attorney in fact, for her and in her name to collect all the assets of the estate of her deceased mother, to sell and convey any real estate, &c., belonging thereto, and to receive, receipt for and release the purchase-money thereof, and to do any and every

[Foreman *v.* Hosler.]

act which may be necessary or which her said attorney in fact may consider proper and prudent in order to dispose of said real estate, and to collect the proceeds of any sale made by him, and in general to do any act relating to the sale, disposal or improvement of said real estate of said decedent as she herself could do. One of the objects of the power of attorney as expressed therein being to save the expense and delay of making the sale of the said real estate under proceedings in the Orphans' Court, the said decedent having no debts, &c. This express, full and plain letter of attorney was acknowledged under oath, and on the day following recorded in the recorder's office at Carlisle.

" On the 19th of March 1872, the Court of Common Pleas of this county finds the fact of desertion of Mrs. Richards by her husband, covering and relating back to the date of the letter of attorney nine months previously, and made a decree, and granted her a certificate under the Feme Sole Trader Act.

" We have then next on the 27th day of May 1872, a conveyance, as given in evidence by the plaintiff, of the land described in the writ, with certain reservations by N. H. Sawtelle and Eva Amelia Richards, by her attorney in fact, N. H. Sawtelle, to Eva Amelia Richards.

" This was offered by the plaintiff for the purpose of showing a conveyance of the life estate of the grantor to the grantee, and also to show an intention on the part of the grantor to convey the fee under the power of attorney and exhaust the power of attorney. This deed was recorded the same day. The plaintiff then next, in further claim of the passage of title, gives in evidence a mortgage not in the name of Mrs. Richards, the feme sole trader, but by J. J. Cart and Eva Amelia Cart, his wife, to L. T. Greenfield, dated and recorded 30th September 1874, upon same property described in the Given deed, with certain exceptions; and it is proven and admitted that this Eva Amelia Cart is identical in person with Eva Amelia Richards. Scire facias was issued upon this mortgage against J. J. Cart and Eva A. Cart, and judgment entered 1st September 1876 for $213.24. Levari facias was issued against same defendants to No. 2, November 7th 1876, and returned stayed by endorsement of plaintiff's attorney November 28th 1876. A levari facias issued to No. 62, January 7th 1878, and sheriff returns 14th January 1878 premises sold 11th January 1878. Second described property (being the Given tract) sold to James K. Foreman for $250.75, which is followed by the sheriff's deed of 21st January 1878 to the purchaser.

" Then we have it established that there is no presumption of the death of James B. Richards, and that on the 22d of April 1878, and not until that day, Mrs. Eva A. Richards, not Cart, obtained from this court a decree of divorce from her husband, James B. Richards. Now how can it be seriously contended that the

title of Mrs. Richards passed by and under the mortgage of 30th September 1874 of J. J. Cart and Eva Amelia Cart, his wife? The mortgage-creditor does not contract with the feme sole trader, Eva Amelia Richards, not with her as the deserted wife of Richards, but distinctly and expressly with her as the wife of J. J. Cart, who unites with her in the execution of he mortgage. It is :he estate of Mr. and Mrs. Cart, if any passed by the mortgage, which is levied on and sold to the plaintiff.

"How can he invoke the aid of the feme sole trader acts when their provisions were never exerted in the indenture of mortgage? Can he pretend to claim to have the estate of a married woman, whose husband was living, and who did not join with her in the mortgage? He has not this woman's title in either of these two ways, either as a feme sole trader or as a married woman uniting with her husband in executing a valid mortgage on her separate property, for Cart was not her husband, but Richards was, even after the time of bringing this ejectment. The plaintiff has shown no title to the real estate of Eva Amelia Richards.

"The mortgage-creditor obtained a lien on such estate, and only on such estate as Mr. and Mrs. Cart, as such, could create. The court cannot add to or strengthen it, the subject of the mortgage. Ex nihilo nihil fit. It is too weak to stand alone. The parties making defence prove that they held under N. H. Sawtelle and Eva A. Richards. They were all in possession at the time of the execution of the mortgage, 30th September 1874, and at the time of the issuing and service of the writ in December 1877, and at the time of the sheriff's sale to the plaintiff on the 11th January 1878, except H. G. Carr, whose lot was unimproved and unoccupied, but whose deed was recorded 24th December 1872. He shows, however, a better title to it than does the plaintiff, the purchaser of the real estate in controversy, who has been substituted as the plaintiff on record under the Act of 26th April 1850.

"The purchaser prosecutes the action. His claim is distinctly rested upon the mortgage and the proceedings thereupon. He was substituted as plaintiff, Mrs. Eva A. Cart, by writing endorsed upon the motion, agreeing to the substitution. The plaintiff on the trial expressly objected to the admission of any evidence which might affect Mrs. Richards alone, such as the evidence in the proceedings resulting in the decree of Mrs. Richards as a feme sole trader (although offered by the plaintiff himself), and that might therefore prejudice the present plaintiff. It appeared upon the trial that the purchaser has found abundant fruits of the sale in portions of the Given tract which are not in dispute, which had not been contracted for under the power given by Mrs. Richards by her letter of attorney of June 19th 1871, with third parties, yet the purchaser continues to cry give! give! against poor people defending who have contracted and paid purchase-money and built themselves

houses on this tract. The claim on his part is utterly destitute of actual or legal merit. It is not at all necessary to attack the judgment on the scire facias sur mortgage. That was against Mr. and Mrs. Cart alone. The parties defending in this suit had no notice of that proceeding, and they are not to be affected by it. Their titles are all prior in time to the mortgage, and none of the questions arising in this case were considered or adjudicated upon the scire facias.

"The defendants are not intruders or trespassers. They all hold deeds from and by N. H. Sawtelle for himself, and as attorney in fact for Mrs. Richards, except James Tait, who, however, is entitled to a deed, having contracted in Mrs. Sawtelle's lifetime, and paid all the purchase-money to Sawtelle, who was administrator of the estate of Mrs. Sawtelle as well as attorney in fact of Mrs. Richards, and who signed receipts for some of the Tait purchase-money sometimes as administrator, and once, at least, as agent.

"Let judgment be entered for the defendants agreeably to the provisions of sect. 2 of Act 22d of April 1874."

Foreman filed a number of exceptions, which the court overruled. He then took this writ, and alleged that the court erred, inter alia, as follows:

1. In not "stating distinctly and separately the facts found and the conclusions of law." 2. In declaring the mortgage under which the plaintiff claims inadequate to convey to him by purchase at sheriff's sale upon a levari facias thereunder, all the right, title and interest of the person who styled herself therein Eva Amelia Cart.

*W. Trickett, J. W. Wetzel* and *F. E. Beltzhoover*, for plaintiff in error.—The decision of the court in this case intermingles the law with the facts and does not state them separately and distinctly as the Act of 1874 requires. Assuming a new name and executing an instrument in that name does not vitiate it when the identity of the person is undisputed. The use of a name in a deed is to identify the grantor and grantee.

The identity of the maker of the Greenfield mortgage with the woman who had been the wife of Richards, but was emancipated from his control, is not only proven, but is conceded. The court also finds it to be a fact. The function of the name is fully discharged in this case therefore. The woman who had been decreed a feme sole trader, under the name of Eva Amelia Richards, is the woman who made the mortgage.

Does a woman who has the power to mortgage her real estate lose that power, if, in the instrument, she adopts the surname of a man of whom she styles herself the wife, and whose name, as a party in the conveyance, she combines with her own?

[Foreman *v.* Hosler.]

Mrs. Richards pretended to Greenfield that she was the wife of Cart, and as such she adequately executed a mortgage. The plainest equity requires that whatever name or status she assumed, she shall be held at least as far as she could be, as if such name was in fact hers, or such status really existed.

*C. P. Humrich,* *W. J. Shearer* and *John Hays,* for defendants in error.—The Act of 1855, Purd. Dig. 1008, Pamph. L. 24–26, extending the provisions of the Act of 1718, 1 Sm. Laws 99, to wives deserted or neglected by their husbands, intended that the liabilities of the Act of 1718 should only extend to married women pursuing a business or trade. The trading here did not fall within the act: Jacobs *v.* Featherstone, 6 W. & S. 346. It is not a question of identity but one of power.

Clearly Mrs. Richards was not a deserted wife engaged in some business for the support of herself and children. If she was not she had no power to execute the mortgage as a feme sole. The certificate of the court had become a nullity. She discovered it in her acts. She asserted she was a wife living with her husband, and as such gave this mortgage, and that she was not a feme sole trader. The mortgage therefore was without validity. All proceedings under it bear the same taint. Foreman therefore took no title under his purchase. The defendants were in possession when the mortgage was recorded, and whether their title be good or bad cannot be questioned in this case by this plaintiff.

Mr. Justice STERRETT delivered the opinion of the court, May 31st 1880.

This action was commenced by Mrs. Eva A. Richards, the only child and heir-at-law of Mrs. Mary S. Sawtelle, who acquired title to the land in controversy in 1870, and died intestate June 4th 1871. In September 1874, Mrs. Richards, claiming to be the wife of J. J. Cart, united with him as such in executing the Greenfield mortgage, which embraced the same land. Judgment was subsequently obtained on the mortgage, and the land was sold and conveyed by the sheriff to James K. Foreman, the plaintiff in error, who, claiming the title of Mrs. Richards by purchase at sheriff's sale, had himself substituted on the record as plaintiff, and thenceforth the suit was prosecuted by him in his own name.

The parties, by agreement, dispensed with trial by jury, and submitted the decision of the case to the learned judge of the Common Pleas, who found, inter alia, that Mrs. Richards was deserted by her husband from the decease of her mother in 1871, until she was divorced by decree of court in 1878, and that she is the same person who, as the wife of J. J. Cart, united with him in executing the mortgage above mentioned. It was claimed by the plaintiff, that the interest of Mrs. Richards in the land was

bound by the mortgage, and passed to him as purchaser at the sale under the levari facias, and hence he was entitled to recover. The mortgage was thus an essential link in the only chain of title under which he claimed; and if, as was contended by the defendants, it was invalid or insufficient to pass title, he failed to make out even a prima facie case, and the defendants were entitled to judgment without proof of any title in themselves. Another ground of defence was, that the defendants were in possession under title derived from Mrs. Richards, or her mother, anterior to the date of the mortgage.

While it was conceded by the learned judge, that as a deserted wife in fact, and so found by the decree of court in March 1872, Mrs. Richards was invested by the Act of May 4th 1855, with full power and authority to convey or encumber her real estate as a feme sole, he held that inasmuch as she had not undertaken to execute the mortgage in that capacity, but as the wife of J. J. Cart, her interest in the land, whatever it might have been, was not bound by the mortgage, and the plaintiff acquired no title under the sheriff's sale. The other ground of defence, viz., possession under superior title was not fully considered, nor were all the facts necessary to a just determination thereof found by the court. The judgment was based solely on the insufficiency of the mortgage. In this we think there was error. It is conceded that at the date of the mortgage, and for a long time before Mrs. Richards was deserted by her husband, and was not divorced from him until 1878. While she assumed to be the wife of Cart, and in that name united with him in executing the mortgage, she was in reality the deserted wife of Richards. This fact was found by the court, and was also conclusively established by the decree made in 1872. Her status being thus fixed, she had full power and authority under the Act of 1855 to sell or mortgage her separate real estate: Wilson et al. *v.* Coursin, 22 P. F. Smith 306. In that case it was held that a married woman who had been decreed a feme sole trader under the act, had power during the lifetime of her husband to convey her separate real estate by deed in which he did not join. In several of its features the act has received judicial construction which is not in conflict with the doctrine of that case. It was ruled in Black et al. *v.* Tricker, 9 P. F. Smith 13, that the act was designed to suspend the marital rights of the husband in consequence of desertion and other acts enumerated, and to relieve the wife of some of her marital obligations; that a decree was not necessary to enable her to acquire and hold property, and that when acquired by her own industry and exertions under the circumstances specified in the act, it could not be taken from her by her husband's creditors. In Cleaver *v.* Scheetz, 20 P. F. Smith 496, and Winternitz *v.* Porter, 5 Norris 35, the question of a deserted wife's liability for debts was discussed. As is said

[Foreman *v.* Hosler.]

in the former of these cases, her rights and privileges under the act are not correlative to her liabilities; the former are more extensive than the latter.    The first branch of the second section of the act declares that she shall have all the rights and privileges secured to a feme sole trader by the act of 1718, and be subject as therein provided.    The second branch declares that her property, real and personal, however acquired, shall be subject to her own absolute disposal during life, or by will, and in case of intestacy shall go to her next of kin as though her husband were previously dead.    The language of the act is such as to leave no doubt as to the power of a deserted wife to sell or encumber her real estate without her husband being a party to the deed or mortgage.  Indeed it was not questioned by the learned judge that if Mrs. Richards, as a deserted wife and feme sole trader, had executed the mortgage it would have bound any interest she then had in the land; but, he based his conclusion on the fact that the mortgagee did not contract with her either as a feme sole trader or as the deserted wife of Richards.    On the contrary, he dealt with her expressly as the wife of J. J. Cart, who united with her in executing the mortgage, and consequently the lien he acquired was " on such estate, and only such estate as Mr. and Mrs. Cart, as such, could create."

It is not pretended that Cart had any interest in the land.    If either of the mortgagors had any title it was in Mrs. Richards, and it cannot for a moment be doubted that it was her title the mortgage was intended to convey.    If she, being a deserted wife, had power to convey, her deed could not be nullified by the fact that she called herself Mrs. Cart, or the wife of J. J. Cart, when it is conceded she was not.    Styling herself in that way could not destroy her identity nor divest her of any power or authority she had over her separate estate as the deserted wife of Richards.    By whatever name she chose to call herself, she was still the same Mrs. Richards; nor could the fact that Cart, as her pretended husband, was a party to the mortgage affect its validity.    When a married woman conveys under the authority given her by the act, it would be well to recite the fact or facts which bring her within its provisions, and refer to the decree, if any has been obtained, but we cannot hold that the failure to do so vitiates the deed. While such recital of authority is entirely proper and desirable, it is not essential.    The act prescribes no particular form.

We are of opinion that the mortgage executed by Mrs. Richards, in the name of Cart, &c., bound whatever title she had in the land at that time, and that the same passed to the purchaser at sheriff's sale under the mortgage.    The judgment was therefore based on an erroneous conclusion.

The second ground of defence, as already stated, was possession under superior title derived from Mrs. Richards or her mother. The questions involved in this were not fully considered, nor were

[Foreman *v.* Hosler.]

all the facts necessary to a proper determination of them found by the court, and hence the case must be remanded for re-trial. Some of the defendants claim that before and at the time the mortgage was given they were in possession under conveyances duly executed by N. H. Sawtelle as attorney in fact for his daughter, Mrs. Richards; others claim under equitable titles, of which it is alleged the mortgagee had actual or constructive notice. In June 1871 the power of attorney referred to was executed by Mrs. Richards, giving her father full power and authority to sell and convey her real and personal estate, to receive, receipt for and release the purchase-money thereof, and to do any act that might be necessary or that he might consider proper in order to dispose of the real estate, &c. This power of attorney was not revoked by the deed of May 1872. The effect of that deed was to pass his title as tenant by the courtesy, and unite his life estate with her estate in remainder. It appears her father subsequently acted under the power of attorney, and it is claimed that she not only recognised some of his acts, but compelled him to account for purchase-money which he collected. These and other matters pertaining to the defence will claim the consideration of the court, and so far as they tend to sustain the titles set up by the respective defendants, due weight should be given to them.

As is said in Ellis *v.* Lane, 4 Norris 265, it is of the utmost importance that the plain and explicit requirements of the Act of April 22d 1874 should be strictly complied with. The facts found by the court, so far as they are relevant or material to a just decision of the cause, should be separately and distinctly stated, with at least as much precision and particularity as are required in a special verdict; and then, after answering the points, if any are submitted, the conclusions of law applicable to the facts should be clearly stated. When, as in this case to some extent, the facts are blended with the conclusions of law, neither the letter nor the spirit of the act is complied with; and sometimes great trouble is experienced in gleaning the facts upon which the judgment is based.

Judgment reversed and record remitted for re-trial.